AETNA LIFE INS. CO. v. STRAUCH, Adm'r.

No. 25647.    April 20, 1937.

618

Embry, Johnson, Crowe & Tolbert, for plaintiff in error.

S. D. Williams and Blanton, Curtis & Blanton, for defendant in error.

BUSBY, J. On November 3, 1932, Del'a Oliver, who was then 16 years old and the wife of Claude Oliver, was murdered by her husband and his nephew, George Oliver. On or about October 20, 1932, the Aetna Life Insurance Company had delivered to Della and Claude Oliver a policy of life insurance for $5,000 on the life of Della naming Claude as the beneficiary. This policy had been executed pursuant to an application for insurance signed by Del'a after Claude had supplied to the soliciting agent of the company most of the information contained therein. The application was dated September 26, 1932. By reason of the prepayment of the first quarterly premium the insurance had been in force for about three weeks before the policy was actually delivered.

Immediately prior to the acquisition of the policy Claude Oliver had been quite active in attempting to arrange for insurance on the life of Della with the agents of other companies. The couple had only been married about a month when the application for the Aetna insurance had been executed.

The beneficiary's participation in the murder of his bride precluded his participation in the proceeds of the insurance policy. It did not, however, in itself release the insurance company from liability on the policy or prevent the same from being collected for the benefit of the estate of the insured. Equitable Life Assur. Soc. v. Weightman, 61 Okla. 106, 160 P. 629; Meyer v. Johnson (Cal.) 2 P. (2d) 456. However, if the beneficiary conceived the idea of murdering the insured prior to the time the insurance was procured and with that thought in mind, the beneficiary himself procured the policy, either in person or acting through the insured as an innocent instrumentality so that the insurance policy was in actual fact at its inception a contract between the beneficiary and the insurance company, as distinguished from a contract between the innocent insured and the company, the insurance company, when the risk has been matured by the subsequent murder, may defeat liability on the grounds of fraud. Mutual Life Ins. Co. v. Armstrong, 29 L. Ed. 997, 117 U. S. 591; Hewett v. Equitable Life Assur. Soc. of the U. S., 8 Fed. (2d) 706. In applying this principle, care must be taken to avoid confusion in thought. One of the essential features of the defense is that the contract of insurance must in its inception arise from an agreement between the insurance company and the one who contemplates the murder. The mere fact that the beneficiary or some other party entertains a secret intent to murder one who is procuring insurance does not relieve the company from liability upon the subsequent commission of the unlawful homicide if the expected murderer does not participate in procuring the insurance in such a manner as to become, in effect, the party who contracts with the insurance company.

When recovery upon the policy was sought in this case by Harold Strauch, administrator of the estate of Della Oliver, the insurance company based its unsuccessful defense upon the theory that the policy had in fact been procured by Claude Oliver, who then intended to subsequently murder his wife. The defense, as we have previously noted, is upon the grounds of fraud practiced upon the company by the one who procured the policy, thus enabling the company to rescind the whole transaction.

When the case was tried, the company requested an instruction which would, in effect, have relieved it from liability by reason of Claude Oliver's evil design, even though Claude Oliver had nothing to do with obtaining the policy. The trial court refused to give the instruction. The refusal of the trial court to give the re-

quested instruction was correct. The jury was correctly and fairly advised upon the point in the instructions given.

This brings us to the principal question in the case which concerns the rejection of proffered evidence.

At the time this case was tried, Claude and George Oliver had been electrocuted. The insurance company offered to prove at the trial that Claude Oliver had, in connection with confessing or admitting the murder of Della Oliver, stated that prior to his marriage to Della he and George Oliver had agreed that one of them would marry a girl, procure insurance on her life, and that they [1](Claude and George) would then murder the girl and collect the insurance; that pursuant to this plan he married Della, procured the insurance, and, assisted by George, murdered her.

The declarations were hearsay, but counsel for the insurance company contend they were admissible under an exception to the rule excluding as hearsay evidence the statement of third parties; that they were statements of a declarant since deceased and that the facts stated were against the pecuniary interest of the declarant at the time the statements were made.

The prevailing exception to the rule excluding hearsay which is invoked by counsel embodies four requirements: (1) The declarant must be unavailable as a witness (death is sufficient and usually required); (2) it must appear that the declaration or statement related a fact against the apparent or prima facie pecuniary or proprietary interest of the declarant at the time it was made; (3) the declaration must have concerned a fact personally cognizable by the declarant; (4) the circumstances must render it improbable that a motive to falsify existed. Jones, Commentaries on Evidence (2d Ed.) p. 2135; Wigmore on Evidence (2d Ed.) vol. 3, p. 188, et seq.; Halvorsen v. Moon & K. Lumber Co., 87 Minn. 18, 94 Am. St. Rep. 669, 91 N. W. 28.

Wigmore in his work on Evidence (vol. 3, 2d Ed. p. 191) observes that "the basis of the exception is the principle of experience that a statement asserting a fact distinctly against one's · interest is entirely unlikely to be deliberately false or heedlessly incorrect, and is thus sufficiently sanctioned, though oath and cross-examination are wanting."

That Claude Oliver was by reason of his electrocution unavailable as a witness when this case was tried is undisputed. But counsel for the administrator assert the testimony should be excluded on the theory that his deposition could and should have been taken prior to his death. We are unable to find any adjudicated case which sustains this position. The mere fact that depositions could have been previously taken (assuming that Claude Oliver was willing or could have been forced to testify on the point) does not seem to have been considered a controlling or important element in the cases dealing with this feature of the law of evidence. We are unwilling to modify the existing and established rule upon this point, although we recognize a degree of merit and logic in counsel's contention. The argument is, we think, overbalanced by the consideration that such an innovation would, carried to its logical conclusion, practically destroy the well-established exception.

We apprehend that the contingency of a potential witness' death is in every case a possibility, and whether the possibility is also a probability resolves itself into a question of reason for apprehending the occurrence of the contingency before trial. Thus the innovation suggested might make the admissibility of the evidence depend upon the physical condition of the declarant. A statement against interest made by a person since deceased might thus be admissible or inadmissible depending upon the seriousness of some known ailment, say, for instance, stomach trouble. True, in this case, Claude Oliver was sentenced to die, but we apprehend that from a mortality standpoint based upon human experience and history, there are many diseases accompanied by a greater ratio of fatality than death sentences. The field of inquiry suggested by the requested ruling on this element of the exception is fraught with too much uncertainty to justify its judicial approval.

We therefore hold that the fact that a declarant's deposition might have been taken does not render his statement against interest inadmissible, providing the same satisfies the established requirements for the admission of such statements.

We next consider the relation of the facts stated by the deceased declarant to his pecuniary interest. At this point it should be observed that a declaration against physical or personal interest as distinguished from pecuniary or proprietary

interest, does not qualify a statement for admission in evidence under the exception, but if a stated fact is against the pecuniary interest of the declarant, it is not rendered inadmissible because it is also against his personal interest. On the contrary, if the statement is otherwise admissible, the fact that it may also subject the declarant to punishment adds to its weight. Jones' Commentaries on Evidence (2d Ed.) p. 2139; Weber v. C., R. I. & P. Ry. Co., 175 Iowa, 358, 151 N. W. 852, L. R. A. 1918A 626. Wigmore is of the opinion that such statement should be admissible if contrary to either type of interest, but recognizes the law to be otherwise (Wigmore on Evidence [2d Ed.] vol. 3, p. 206, et seq.).

The insurance company contends, in substance, that the statement offered satisfies the requirement that it must have been at the time it was made against the pecuniary interest of the declarant in three respects: (1) That it contained an admission of the fact of murder, which fact precluded the declarant as the murderer from recovering the proceeds of the policy; (2d) that it contained an admission of fraud practiced on the insurance company which would have enabled the insurance company to recover damages; (3) that the act of murder would also subject the declarant to pecuniary liability in tort.

In the first respect above mentioned, the statement satisfies the requirement of the rule. In the two respects last above stated, the conflict of the statement made with the pecuniary interest of the declarant is insufficient.

Since the guaranty of truthfulness which renders a statement admissible arises from the circumstance that the fact stated is against the pecuniary interest of the declarant, the conflict with pecuniary interest must be real and such as was probably within the mental cognizance of the declarant at the time it was made. An adversity to pecuniary interest which is conjectural, contingent, or improbable is not sufficient. Jones' Commentaries on Evidence (2d Ed.) p. 2141; Wigmore on Evidence, vol. 3, p. 194.

The pecuniary interest of Claude Oliver in the collection of the proceeds of the policy from the insurance company was sufficiently real that any statement of fact sufficient to defeat his right of recovery made by him while he possessed the prima facie right to collect the insurance satisfied the requirement of the rule. Thus, in so far as he admitted the fact of murder, which in itself would deprive him of the right to receive the proceeds of the policy, his statement was against his pecuniary interest as a beneficiary under the policy. However, Claude Oliver, according to admissions of the parties, was a poor man. It does not appear that he had any property to satisfy a judgment. He was at the time he made the statement charged with murder. To hold or assume that he made the statement with a mental consciousness that he might be compelled to respond in damages for tort or for fraud and deceit would be a close approach to the ridiculous. The guaranty of truthfulness cannot be supplied by this possible result of the statement made. We are not unmindful that in some cases a statement rendering the declarant liable in tort was held to satisfy the requirement now under consideration. But that is not the usual holding, and the circumstances of this case do not justify such a holding here.

In one respect, then, the statement made satisfies the requirement of the rule. This rendered the entire statement admissible, or so much thereof as accompanied the admission of fact which was against pecuniary interest. As said by Wigmore (2d Ed., vol. 3, p. 198):

"Since the principle is that the statement is made under circumstances fairly guaranteeing the declarant's sincerity and accuracy * * * it is obvious that the situation guarantees the correctness of whatever he may say while under that influence. In other words, the statement may be accepted, not merely as to the specific fact against interest, but also as to every fact contained in the same statement."

We have stated specifically the feature of the declarant's statement which was sufficiently against pecuniary interest to meet the requirement for the reason that it appears from the offer of proof that the declarant talked of this matter on several occasions, and it may appear when the proof is resubmitted that on some of the occasions he did not refer to the matter which would render his remarks admissible. The conversation on such occasions should be excluded.

Counsel for the administrator contend that the statements under consideration were in no wise against pecuniary interest. They urge that the moment Claude Oliver murdered De'la Oliver he forfeited his right to recover and thereafter had no pecuniary interest against which he could make a statement. The argument is ingenious and well presented, but it over-

looks the real basis of this requirement. Of course, when any declarant makes a statement prior to death which is against pecuniary interest, it relates to some fact and it is in reality the fact stated which is against interest. In most cases the fact related occurred prior to the statement. If counsel's theory were correct, scarcely any statement would be admissible, for it would be said, "A fact was related in the statement which shows the declarant had no interest when the statement was made." Wigmore carefully points out that this type of statement is admissible, not because the statement is against interest, but because the fact related is against interest. Wigmore on Evidence (2d Ed.) par. 1462. And the interest involved in this class of statement is not the actual interest, but the apparent or prima facie interest at the time the statement was made. Modern Law of Evidence, Chamberlayne, sec. 2774.

Of course, where one has voluntarily conveyed his interest in the subject matter and no longer possesses the apparent or prima facie interest, his statements thereafter made are not admissible. Many cases dealing with situations of this nature are cited in the briefs. The obvious distinction renders unnecessary a discussion of such authorities.

Claude Oliver was vested with an apparent pecuniary interest in the insurance policy at the time the statements were made. His statements were in the respect above indicated against that interest.

Incidentally the fact, if it be a fact, that he made the same statement on several occasions does not render second and subsequent statements inadmissible, provided they satisfy the requirements of the exception to the hearsay rule. No authority presented or examined holds otherwise.

The third and fourth requirements of the exception to the rule excluding hearsay evidence are, we think, sufficiently satisfied by the proffered proof in this case. It appears that the declaration concerned facts personally cognizable by the declarant and that the circumstances rendered it sufficiently improbable that the declarant entertained a motive to falsify to warrant the admission of the evidence.

We therefore conclude that the offer of proof was improperly refused by the trial court and that the insurance company is entitled to the benefit of the proffered evidence for whatever weight it may be entitled to.

Just one other point which may obviate the necessity of a future appeal in this case. The insurance company says that the evidence offered, if and when admitted, will establish their defense **"to a certainty,"** by which we assume they mean **conclusively.** With this we do not agree. The statements, when related to a jury, will still depend on the truthfulness of a confessed murderer who admittedly took part in a brutal and heinous crime, and who, at the time this case was tried, had been convicted of the same. The jury may attribute to the statement such weight as in its judgment is merited, but this court declines to declare it conclusive as a matter of law on any point. The evidence in this case makes its solution depend upon a question of fact.

In connection with the proffered proof in this case, the insurance company also offered to prove that George Oliver, the nephew of Claude Oliver, made statements of substantially the same import as made by Claude Oliver. George Oliver was not a beneficiary named in the insurance policy and had no apparent pecuniary interest therein. His statements were wholly inadmissible, except in so far as they may have been adopted by Claude Oliver in conversations or statements in which they both participated.

The case is reversed, with directions to grant a new trial and proceed in a manner not inconsistent with the views herein expressed.

BAYLESS, V. C. J., and RILEY, WELCH, PHELPS, CORN, GIBSON, and HURST, JJ., concur. OSBORN, C. J., not participating.